BABB v. SULLIVAN.

1. REVIVAL OF JUDGMENT—RES JUDICATA.—A defendant summoned to show cause why a judgment should not be revived for a sum stated, failed to appear, and an order of revival, "according to the form, force, and effect of the former recovery," was entered. Thereupon an execution was issued for the sum claimed in the summons, and the defendant then brought action to have the judgment marked satisfied, alleging that it had been fully paid; but the complaint in this action was dismissed. The execution was then levied, whereupon the executors of the judgment debtor, now deceased, moved in the original cause to have the execution amended, alleging that a much smaller sum was due at the time of revival than was called for by the execution. *Held*, that the amount due on the revived judgment was *res judicata*.

2. IBID.—LACHES—ACQUIESCENCE.—The summons to renew having been served in October, 1883, the order of revival entered, and execution issued in December, 1884, and this motion to amend the execution not noticed until July, 1894, the judgment debtor and his executors are barred, of the relief they seek, by laches and acquiescence. The principles which govern the courts in applying the doctrine of laches, as affected by lapse of time and other circumstances, stated and explained.

Before FRASER, J., Laurens, September, 1894.

In this case the Hon. W. C. Benet, Judge of the First Circuit, sat in the seat of Mr. Justice Pope, who had been of counsel in the cause. It was a motion made by the executors of Hewlett Sullivan in July, 1894, to amend an execution issued in December, 1884, in the case of M. E. Babb, as clerk of court, &c., against Hewlett Sullivan.

*Mr. C. C. Featherstone*, for appellant.

*Mr. Jos. A. McCullough*, contra.

April 1, 1895. The opinion of the court was delivered by

MR. JUSTICE BENET. This was a motion to amend an exe-

cution made *ex parte* Joseph P. Latimer and John H. Latimer, as executors of the last will and testament of Hewlett Sullivan, deceased, *in re* M. E. Rabb, as clerk, successor, &c., *v.* Hewlett Sullivan. The same moving parties made, at the same time, two other motions, one *in re* Rice, as clerk, successor, &c., *v.* Sullivan, to vacate a judgment; and one *in re* Shell, as clerk, successor, &c., *v.* Sullivan, to quash an execution. All the three cases in which the several motions were made were closely connected and interdependent. The Circuit Judge, in the decretal order appealed from, refused the first two motions, but granted the third, namely, the motion to amend the execution, remarking that "this motion is made in the event that both of the preceding motions were refused."

To make plain the grounds upon which this third motion was granted, as well as the grounds upon which the order granting it was appealed from, it is necessary to set forth the following statement of facts: In 1877, Ira Rice, as clerk of court and successor of Homer L. McGowan, commissioner in equity for Laurens County, in a suit for foreclosure against Hewlett Sullivan and his sureties, John Hellams and C. P. Sullivan, jr., recovered judgment against Hewlett Sullivan and John Hellams for $4,368.98. On this judgment Hewlett Sullivan, from time to time, made various payments. In 1883, a copy summons to renew execution in the main cause was served on Hewlett Sullivan. It appears that both the original summons and the copy have been lost, and that there was some dispute whether the summons, in its terms, stated the amount for which it was proposed to renew the execution. But the attorneys who issued the summons made affidavit that, to the best of their reccollection, the amount was stated therein as being for $1,000, and for $368.53 costs. To this summons to renew, the defendant, Hewlett Sullivan, failed to file either answer or demurrer, or to give notice of appearance. On 2d of December, 1884, therefore, Judge Pressley granted his order, that "the judgment and execution of *Ira Rice, clerk, plaintiff*, against *Hewlett Sullivan*, be renewed, to have the force, form, and effect of the former recovery, with leave to G. W. Shell to issue execution therefor." And on 12th December, 1884,

counsel representing sundry creditors of M. A. Sullivan, deceased, to whose estate the debt was owing, procured the issuing of an execution in said cause against Hewlett Sullivan for $1,000, and for $368.53 costs.

When this renewed execution was levied upon the land of Hewlett Sullivan on the 12th March, 1885, an action was commenced by him on 23d March, 1885, for the purpose of enjoining its enforcement, and to have the judgment cancelled and marked satisfied.   In that action (*Sullivan* v. *Shell*) the plea of full payment was set up.   The cause was heard by Judge Hudson, who granted the order of injunction prayed for.   On appeal to this court, the judgment of the Circuit Court was reversed and the complaint dismissed.   *Sullivan* v. *Shell*, 36 S. C., 578.   In that case, Mr. Chief Justice McIver, delivering the opinion of the court, said, that the plaintiff (Sullivan) was not entitled to maintain the action, adding: "If he ever had any remedy, it should have been sought by a motion in the cause in which the judgment complained of was rendered.   But even if he had resorted to that mode of relief, we do not see how he could have successfully met the plea of *res adjudicata*.   When he was served with summons to show cause why the judgment should not be revived and execution issued to enforce the same, he was afforded the opportunity to raise the very same questions which he now seeks to raise by this action; and this court has repeatedly decided that one who fails to do so when afforded such opportunity, is forever afterwards estopped from doing so."   *Ibid.*, 580.   This opinion was handed down on 3d September, 1892.   Thereafter, as we gather from the statement of facts in the brief, the renewed execution was again levied, when, Hewlett Sullivan having died, his executors brought another action, claiming that the consideration of the judgment had failed, and asking relief on that ground.   That action also was dismissed.

Again was the renewed execution levied, whereupon, the executors instituted this proceeding, making a motion in the original cause in which the judgment was rendered for an order to amend the renewed execution, by reducing the amount from $1,000 to $76.   It is not unlikely that this mode of relief

was resorted to in consequence of the suggestion made in *Sulli-van* v. *Shell, supra,* and quoted above. This motion was heard on its merits in the Circuit Court by Judge Fraser, who rendered his decree in favor of the executors, and granted the order moved for, holding as follows: ''The plaintiff contends that as the amount of the balance due upon the judgment was stated in the summons to renew, the defendant was estopped from disputing it. Assuming for the purpose of this motion that the summons did state that there was a balance of $1,000 and costs, $368.53, due upon the judgment, the order of Judge Pressley did not, but renewed the judgment with the form, force, and effect of the former recovery. The executors, therefore, have the right to show, if they can, that the execution has been renewed for too large a sum. The balance due upon the judgment at the date of the order of renewal being in dispute, it is ordered, that it be referred to J. K. Jennings, Esq., as special referee, to take testimony and report to this court the balance ascertained by him to be due upon said judgment at the time said execution was renewed; and that the execution be amended, if the same be necessary, so as to make it issue for the amount due upon said judgment at ''the time said execution was renewed.'' From this decretal order the plaintiff appeals upon several grounds.

The view we take of the case renders it unnecessary to pass upon more than the first and fifth exception, which raise the questions of *res adjudicata* and laches. It seems to us that the mere statement of the facts as above set forth, with the various proceedings had both on Circuit and in this court, and with the dates showing the time which has elapsed, clearly calls for a reversal of Judge Fraser's decretal order on the two grounds of *res adjudicata* and laches. It is admitted for the defendant that in *Sullivan* v. *Shell, supra,* the issue of full payment has been adjudicated. But it is argued interrogatively that the plea of part payment might not constitute a defence to the application to renew an execution. We cannot so hold. We see no reason for holding that the defence of part payment could not have been set up at the time the application to renew was made. On the contrary, we hold

that there was then offered to the defendant Sullivan an opportunity in law to set up the plea on which his privies now insist. He failed to take advantage of it, and suffered judgment to be taken for the amount stated in the summons to renew.

Following in the line of the doctrine laid down by this court in *Hart* v. *Bates*, 17 S. C., 40, and in *Ex parte Roberts*, 19 S. C., 156–8, where Mr. Justice McGowan clearly defines the requisites of the plea of *res adjudicata*, we are able to say of the case at bar and the proceedings had before Judge Pressley to renew the execution, that the parties or their privies are the same; that the subject-matter is the same; and that the precise point—part payment—if not expressly ruled upon, was necessarily determined by the judgment of this court upon the plea of full payment in *Sullivan* v. *Shell*.

This court has repeatedly declared, that when a party served with summons to show cause why a judgment should not be revived and execution renewed, fails to make a defence which he has the opportunity of making, he must be held to have formally made such defence and to have been unsuccessful; and he is forever afterwards estopped from setting up that defence. *Davis* v. *Murphy*, 2 Rich., 560; *Jackson* v. *Patrick*, 10 S. C., 197; *McNair* v. *Ingraham*, 21 *Id.*, 70; *Freer* v. *Tupper*, *Ibid.*, 75; *Crenshaw* v. *Julian*, 26 *Id.*, 283; *Sullivan* v. *Shell*, 36 *Id.*, 578. We, therefore, sustain the appellant's first exception, which charges error in the Circuit Judge in not holding the defendant estopped from making the defence of part payment, such a defence being *res adjudicata*.

We sustain also the appellant's fifth exception, which charges error in the Circuit Judge in not holding the defendant's motion barred by his own laches. The summons to renew was served in October, 1883. The order of Judge Pressley, granting leave to renew the judgment and execution, was passed in December, 1884. And now, in 1894, it is sought for the first time to amend the renewed execution. No reason or excuse is given for this long delay; nor is the court informed when the discovery was made that the renewed execution was for too large an amount; nor is there any allegation of fraud. It cannot be said that the defendant has acted with reasonable

diligence. He knew that the judgment had been revived against him; he knew the amount for which the execution had been renewed; and we hold that his unreasonable and unexplained delay, and his failure to set up this defence, when in law it should have been set up, the opportunity offering, amount to such laches as effectually precludes him from obtaining the relief which he or his privies now seek.

It was urged, however, by defendant's counsel, that since the time which elapsed between the order of renewal and the defendant's notice of motion to amend was a few months—from July to December—less than ten years, the delay was not long enough to amount to laches. It is confessedly impossible to adopt a general rule and to fix a definite length of delay which shall justify a court of equity in refusing relief on the ground of laches. Each case must be governed by its own facts, and courts of equity must be trusted to exercise a salutary discretion. As we understand the doctrine of estoppel by laches, the facts in this case would justify us in holding that even a shorter delay than nine years and six months, inexcusable or unexplained, would have furnished the Circuit Court with sufficient grounds for refusing the order moved for. Delay is not the sole factor that constitutes laches. If it were so, some period fixed by statute or by the common law of the courts would afford a safe and unvarying rule. Laches connotes not only undue lapse of time, but also negligence, and opportunity to have acted sooner; and all three factors must be satisfactorily shown before the bar in equity is complete. Other factors of lesser importance sometimes demand consideration—such as the nature of the property involved, or the subject-matter of the suit, or the like. As a definition of laches, however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence.

This definition will be found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of courts of equity, which have from the beginning held themselves ready

to aid suitors who come in good conscience, good faith, and with diligence; and from the beginning they have discountenanced stale demands, and refused relief from the effect of negligence and inexcusable delay. We have seen that from the very nature of equity jurisdiction and the principles that guide and control its exercise, it is impracticable if not impossible to fix a definite period of time as a bar or limitation to suits in equity; that lapse of time is not the only test of staleness; that it needs to be conjoined with negligence or inattention, and with opportunity for diligence and for acting sooner. For it is of the essence of laches that the party charged with it should have had either actual knowledge or such notice as would have put him on inquiry. It is manifest, therefore, that the period of time which shall be a bar in equity must needs vary with the varying circumstances in the different cases. Thus, to constitute laches in a case showing gross negligence, a lesser lapse of time would suffice than in a case of ordinary carelessness and inattention. So, too, would the length of time deemed sufficient be greater or less according as the evidence in the case might show whether the party to whom laches is imputed actually knew of the opportunity he neglected, or was simply presumed to have known.

Laches being the resultant of a combination of negligence, lapse of time, and loss of opportunity, by as much, therefore, as the negligence and knowledge of opportunity may vary in degree, by so much will the period of time vary in length. Speaking generally, it may be said that the greater the negligence and the knowledge, the less will be the time. Hence the great differences in the length of the delay which the courts have held to work laches, varying from a few months to any number of years less than twenty. In the matter of applications to vacate or open judgments, we have already said that the length of time may be affected by the nature of the property involved, or by the subject-matter of the suit in which the judgment was rendered. Thus equity would bar an application to set aside a decree of divorce in much shorter time than it would an application to set aside an ordinary judgment. Recurring to the case before us, we are clearly of the opinion that

the delay of nine and a half years, joined with Hewlett Sullivan's knowledge of the plaintiff's application to renew, and his failure to use the opportunity afforded, was such laches as completely bars him or his privies from obtaining the relief sought. It might be held, also, that under the equitable doctrine of acquiescence the defendant is barred. If laches is the negligent failure to assert a positive right when opportunity is afforded, acquiescence is the intentional failure to resist the assertion of an adverse right. In 1883, Hewlett Sullivan was served with a copy summons to renew the execution; he not only failed to assert any positive right of his own, but he knowingly failed to resist the assertion of the plaintiff's right; and he should be held barred by acquiescence.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the motion of the defendant or his privies dismissed.