15395

LYERLY *ET AL. v.* YEADON *ET AL.*

(19 S. E. (2d), 648)

June, 1941.

*Mr. Henry E. Davis,* of Florence, S. C., for appellants,

*Messrs. Grimsley & Nesmith,* of Florence, S. C., for Respondent,

March 28, 1942.

The opinion of the Court was delivered by Circuit Judge G. Dewey Oxner, Acting Associate Justice:

In November, 1918, Steadman Yeadon was appointed by the Probate Court of Florene County as guardian of the estates of Kirtain Lyerly, David Lyerly and Leverne Lyerly, all of whom were minors. On November 14, 1918, he entered into a bond, in the usual form, in the sum of $1,500.00, with the Fidelity and Deposit Company of Maryland as surety.

This action was commenced in October, 1937, by respondents against appellant, Fidelity and Deposit Company of Maryland, surety on said bond, to recover the penalty of $1,500.00 with interest. David Lyerly died in August, 1922, and as to him, the action is brought in the name of his administrator. On motion of the surety, the guardian, Steadman Yeadon, was made a party defendant. An amended complaint was served on appellants. The guardian did not answer. The surety company answered the amended complaint, admitting the execution of the said bond but denying all other allegations of the complaint, and set up as a bar to the action the defenses of *res adjudicata* and the statute of limitations.

The case was referred to the Master for Florence County who, after taking the testimony, filed a report recommending recovery in favor of the respondents for the full amount of said bond with interest. On exceptions by appellants, the case was heard by the Judge of the County Court who, on June 23, 1941, filed a decree awarding judgment against appellants in accordance with the conclusion reached by the Master, from which decree this appeal is taken.

J. Q. Lyerly departed this life intestate in July, 1918. He was twice married. He left surviving by his first wife six children, namely: Bertie, Kirtain, David, Leverne, Carlie and Courtney Lyerly. He left surviving by his second wife the following three children: Nora, Ovid and John Q. Lyerly, Jr. The widow and the nine children above named constituted the sole heirs-at-law and distributees. At the time of his death, all of these heirs were minors except the widow

and Bertie Lyerly Yeadon, wife of appellant, Steadman Yeadon. The second wife later remarried and became Bertha Calcutt.

The estate consisted of a tract of land in Florence County containing 149 acres and some personal property. The testimony is conflicting as to its value. The Master found that the total estate, real and personal, was worth approximately $15,000.00, which finding of fact was confirmed by the Court below. Appellants contend that the real estate was not worth over $6,000.00 and the personal property not over $900.00. The personal property was sold by the administrator and the share of each child amounted to $90.00. The intestate also carried a policy of life insurance with the Woodmen of the World for $1,000.00 with Bertie Lyerly Yeadon, Kirtain Lyerly, David Lyerly and Leverne Lyerly named as beneficiaries. After his death this insurance was paid and Mrs. Yeadon, being of age, presumably was paid her share. It is undisputed that the remaining $750.00 was turned over to Steadman Yeadon as guardian for his three wards. Upon Kirtain Lyerly attaining his majority, the guardian paid to him $250.00, representing his portion of the insurance, and $90.00, representing his share of the proceeds of the sale of the personal property. It is further admitted that no portion of these funds was ever paid to either Leverne or David Lyerly.

On October 18, 1919, an action for partition of said real estate was commenced in the Court of Common Pleas for Florence County, resulting in a sale in partition, at which the real estate was bid in by appellant Steadman Yeadon for the sum of $3,200.00. Before he had complied with his bid, the widow, in her own behalf and that of her three infant children, instituted proceedings for obtaining a resale of the property, charging unfair practices and fraud on the part of Yeadon in connection with the sale. This proceeding resulted in a compromise settlement between Steadman Yeadon and the widow and her three children under which they were paid the sum of $5,000.00 and the proceeding for resale was

abandoned. In this settlement no provision was made for the respondents who were Yeadon's wards. A deed was executed and delivered to Yeadon by the Master on March 29, 1920, which recited the payment of the amount of the bid.

A portion of this land was sold by Yeadon for $1,740.00 and he borrowed $6,000.00 on the remaining portion from a bank at Lake City. From these receipts Yeadon paid the amount of the compromise settlement. The testimony is conflicting as to the disposition made of the remainder. All of these transactions were carried on by Yeadon in his own name. Subsequently, upon default on the part of Yeadon, the above mortgage was foreclosed by the bank and purchased by the mortgagee. It is undisputed that Yeadon has never paid into Court his bid for the property amounting to $3,-200.00.

In July, 1934, four of the children of John Q. Lyerly by his first wife, including Kirtain and Leverne Lyerly, having in the meantime attained their majority, filed a petition in the original partition proceedings seeking to vacate the decree and sale in partition, alleging fraud on the part of Steadman Yeadon in purchasing this property at much less than its real value. The Circuit Court held that this proceeding was barred by the statute of limitations, which was affirmed by this Court. *Lyerly v. Yeadon,* 183 S. C., 256, 190 S. E., 737.

The foregoing statement constitutes a brief history of the events which led up to the commencement of the instant action. There are fourteen exceptions on the part of appellants, but the principal questions raised by these exceptions are:

1. Have these proceedings been withdrawn by respondents since this action was commenced?

2. Has there been a breach of the bond?

3. Is this action barred, as *res adjudicata,* by the proceedings commenced in 1934?

4. Is this action barred by laches?

5. If the respondents are entitled to recover, should interest be allowed on the penalty of the bond?

These questions will be discussed in the order stated.

Appellants contend that the respondents have authorized their attorneys to withdraw this action and that counsel for the respondents are continuing the action against the wishes of their clients.

According to the testimony offered by appellants, after Steadman Yeadon was made a party defendant, he and Mrs. Yeadon had several conferences with Kirtain Lyerly and Leverne Lyerly resulting in their agreement to discontinue the action. Thereupon Yeadon gave this information to counsel for the surety company who, at the suggestion of Yeadon, prepared a letter addressed to counsel for respondents, requesting that they have an order taken dismissing the action. These letters bear date of March, 1938. It is admitted that Leverne Lyerly signed one of these letters but, according to respondents' testimony, this letter was never received by counsel for respondents, nor was such desire to withdraw the action ever brought to their attention. It is further conceded that the other letter was never signed nor seen by Kirtain Lyerly but Mrs. Yeadon says that she signed his name to it under verbal authority which she had from Kirtain Lyerly. This last letter was received by respondents' counsel who immediately went to see Kirtain Lyerly. He denied to his attorney signing this letter, denied any desire to withdraw the proceedings and requested counsel to continue same. After this conversation, a reference was held on November 28, 1939, at which both Kirtain and Leverne Lyerly testified vigorously in their own behalf. The Master states in his report that when Leverne Lyerly testified at this reference, "there was certainly nothing in his testimony or demeanor to show me that he had any desire to discontinue this action. If he ever had any such desire, he evidently has completely changed his mind."

While there is testimony on the part of Mr. and Mrs. Yeadon that as late as the last reference respondents did not wish to press the action, the Master was in a better position than we to pass upon the credibility of this

testimony. In view of the positive testimony of reputable counsel for respondents that they had never been directed to discontinue the action, we certainly do not feel warranted in disturbing the conclusion of the Master, sustained by the trial Judge, that respondents did not desire a discontinuance of the action.

The next question is whether there has been a breach of the conditions of the bond. Appellant Yeadon conceded that he has never paid into Court the amount of his bid of $3,-200.00 and admits receiving in behalf of his wards their share of the insurance money and the proceeds from the sale of the personal property. In support of their contention that there has been no breach by the guardian of the bond, appellants contend that all funds received by the guardian were expended by him in behalf of his wards.

When J. Q. Lyerly died in the summer of 1918, he and his family, including the respondents, were living on this farm in Florence County. Sometime later Mrs. Lyerly remarried and along with her three children left the farm. Steadman Yeadon was living in Georgia and a few months after Mr. Lyerly's death, he gave up his position in Georgia and came to this farm.

Mr. Yeadon and his wife resided on this farm and operated same for three or four years until it was lost by foreclosure. The brothers of Mrs. Yeadon, including respondents, lived with her and her husband during a portion of this period. She and Mr. Yeadon testified that, in purchasing this property and making the other real estate transactions, Yeadon was acting not for himself but for the benefit of his wife and her brothers; that they were actuated by a desire to make a home for and take care of these minors and to promote their welfare, as otherwise they would have had no home; that from the proceeds of the $6,000.00 loan and the sale of a portion of the property, there was paid the compromise settlement of $5,000.00 and the balance of approximately $2,500.00, together with the funds received by him as guardian, was used in buying livestock, farming implements, mak-

ing necessary repairs, paying taxes and interest for the purpose of carrying on the farming operations; and that there was also paid from these funds the cost of feeding, clothing and otherwise supporting these minors.

During a part of this time Mr. Yeadon was mail carrier. He testified that his salary for this work was also placed in the common fund and used in defraying the foregoing expenses. He further testified that beginning in 1920, due to the decline in the price of cotton, boll weevil and other adverse conditions, he commenced losing money in the operation of the farm, resulting in his inability to carry on and the subsequent foreclosure and loss of the place. During all of this period he testified that he was acting under advice of counsel.

However, no application was ever made to any Court for permission to purchase or operate this farm or to expend any of these funds. Neither the conveyances, the mortgage, nor anything else done in these real estate transactions, disclosed that Yeadon was acting in a fiduciary capacity. Whatever may have been the motive of Yeadon in acquiring and operating this farm, and even though he may have intended to act for the benefit of the minors, there was no authority of law for the expediture of funds belonging to the minors for this purpose. Whatever losses were sustained were his individually. Obviously, under the circumstances, the funds of these minors cannot be charged with Yeadon's unfortunate ventures.

Appellants contend that this Court in the opinion in the previous case adjudicated that in purchasing the real estate, the guardian was not acting for himself but for his wife and her brothers. In support of this contention, our attention is called to the statement in the opinion to the effect that after Yeadon received deed from the Master, he, his wife and her brothers "went into possession of the premises." When this statement was made, the Court was only reviewing the events leading up to the litigation. The issue as to whether the guardian was then acting for the minors was not in any

manner before the Court and no such adjudication was undertaken by the Court. So that his contention is reduced to the alleged claim that the support and maintenance of these children on the farm consumed the funds belonging to them in his hands.

Both the Master and the County Judge found against appellants on this issue. In his report the Master, after reviewing the length of time each of the respondents remained on this farm and the labor performed, concluded: "I am unable to find anywhere in the record testimony to the effect that Kirtain, David and Leverne Lyerly did not well earn their board and keep while they resided as minors with their general guardian, Steadman Yeadon. Therefore, I find and hold that Kirtain, David and Leverne Lyerly did earn their support while they resided as minors with their general guardian, Steadman Yeadon." This finding was confirmed by the County Judge and is fully sustained by the testimony.

Moreover, the inference could reasonably be drawn from the payment by the guardian to Kirtain Lyerly, after attaining his majority, of his share of the insurance and proceeds of personalty that the guardian recognized his liability to the extent of the $340.00 paid. Evidently at that time he did not consider that there was any liability to him for support and maintenance of this ward.

We wish to further point out that the record before us does not indicate that the guardian has ever made any return to the Probate Court of Florence County, nor has he done any other act in recognition of his fiduciary relation other than the payment to Kirtain Lyerly of the sum of $340.00 above referred to.

We think it is clear that there has been a breach in the conditions of the bond.

The next question is whether the action commenced in 1934 is a bar to the maintenance of this action.

It is urged by counsel for appellants that the purpose of the previous action was to require the guardian to account to

the petitioners for the lands of J. Q. Lyerly acquired by him at the partition sale and to have their portions assigned to them. We do not think the record sustains this contention.

This Court, in the opinion in that case, in construing the nature of the proceedings [183 S. C., 256, 190 S. E., 739], said: "This proceeding is directed to fraud alleged to have taken place at the time of the sale of the property, and in no wise is the decree of the Court directing a sale and declaring the interests of the various parties to the suit in and to the proceeds of the sale of the land attacked." And, in construing the petition in that case, further said: "The petition of appellants alleged fraud on the part of Steadman Yeadon in the purchase of this property for very much less than its real value at the time of the sale of the property in 1920 in the partition suit."

Respondents seek in this action to recover against the guardian and his surety for breach of the conditions of the bond. This involves the question as to whether the guardian has properly accounted for the funds coming into his hands and if not, the amount owing to respondents.

The applicable principles in determining the question as to whether this action is barred by the former adjudication are fully reviewed in the case of *Johnston-Crews Co. v. Folk et al.,* 118 S. C., 470, 111 S. E., 15, 17. It is there stated that the essential elements of *res adjudicata* are "(1) Identity of the parties; (2) identity of the subject-matter; (3) an adjudication in the former suit of the precise question sought to be raised in the second suit."

The Court further stated: "If the identity of the parties and the identity of the causes of action have been established, the former adjudication is conclusive, not only of the precise issues raised and determined, but of such as might have been raised affecting the main issue. * * * If the identity of the parties has been established, but the identity of the causes of action has not, the former judgment is conclusive only as to those issues actu-

ally determined." The Court further restated these principles in the following language: "In a subsequent suit between the same parties on the same claim, a judgment in the former suit is conclusive as to every matter that might have been determined; but, where the second suit is upon a different claim, the former judgment is conclusive only as to those issues actually determined."

In the case of *Johnston-Crews Co. v. Folk, supra,* it was held that a decree holding a deed valid in a creditor's action to have it declared fraudulent and void, was not *res adjudicata* in a subsequent creditor's action to have it set aside under the recording Act. In holding that the second action was not barred, the Court said: "We do not see how it is possible to decide that the second action, involving a diametrically opposite theory, is concluded by the adjudication established in the former action. The first action viciously attacks and denies the validity of the deed; the second, concedes its validity, as between grantor and grantee, and seeks to enforce the rights of subsequent creditors against the holder of the legal title under that deed, a matter which was not and could not have been involved in the former action."

Applying these principles to the question under consideration, we think it must be determined adversely to appellants. The causes of action or claims in the two proceedings are essentially different. The only issue in the previous action, which was by petition in the original partition proceedings, was the validity of the sale to Yeadon. The guardian's accountability for the proceeds of sale was not involved, and could not have been, for the issue as to distribution of and accountability for the proceeds of sale could not arise until the validity of the sale was first determined. Moreover, an accounting by the guardian for funds coming into his hands was wholly beyond the scope of the proceedings in partition. In the first proceeding petitioners attacked the validity of the sale. In this proceeding its validity is in effect recognized and the guardian is asked to account for the proceeds of sale. It may be that the former

proceeding is conclusive as fixing the value on the real estate to be used in the accounting, but that certainly would be the limit of its effect upon this proceeding. The accounting for the proceeds of personal property and insurance was not and could not have been involved in the former proceeding.

The determination of the issue as to whether respondents are barred by laches in the prosecution of this action presents a more difficult question. As above pointed out, this action was commenced in 1937. Respondent Kirtain Lyerly attained his majority in 1920 and some time thereafter, the exact time not appearing, was paid his share of the proceeds of insurance and personal property. Respondent Leverne Lyerly attained his majority in 1925, approximately twelve years before this action was instituted. David Lyerly was twenty years old when he died in 1922. The record does not disclose when the administrator of the estate was appointed.

While the period of time which elapsed before this action was instituted is an element to be considered in determining the question of laches, it is not a controlling element, and must be considered along with all the other circumstances. No definite period has ever been fixed by this Court in applying the rule of laches as a defense in equity. Necessarily such period will vary according to the circumstances in each particular case. In the case of *Babb v. Sullivan*, 43 S. C., 436, 21 S. E., 277, 279, the Court said: "It is confessedly impossible to adopt a general rule, and fix a definite length of delay which shall justify a Court of equity in refusing relief on the ground of laches. Each case must be governed by its own facts, and courts of equity must be trusted to exercise a salutary discretion."

We find the following statement on this question in the case of *Thomas v. MacNeill*, 138 S. C., 86, 135 S. E., 643, 645: "While lapse of time is an important element, the better view—though there are cases apparently holding the contrary—is that mere delay in enforcing a demand, in the absence of a bar by statutory limitation or of other circumstances tending to render the demand in-

equitable, will not bar relief. A long lapse of time, however, especially when taken with other circumstances, may create a presumption that a valid right never existed; or that if it existed it has been satisfied, or lost by abandonment, waiver, acquiescence, or equitable estoppel."

In the case last referred to, the Court quotes with approval the following from a decision of the United States Supreme Court: "It is not merely on the presumption of payment, or in analogy to the statute of limitations, that a court of chancery refuses to lend its aid to stale demands. There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court. In matters of account, where they are not barred by the act of limitations, courts of equity refuse to interfere after a considerable lapse of time, from considerations of public policy, and from the difficulty of doing entire justice when the original transactions have become obscure by time, and the evidence may be lost'."

Mr. Justice Fishburne, speaking for the Court in the recent case of *Fallaw v. Oswald*, 194 S. C., 387, 9 S. E. (2d), 793, 796, in referring to the time element, said: "The question as to whether the complainant's suit is to be deemed barred by reason of laches is not to be determined by reference to any particular period as compared to the time during which she delayed assertion of her claim. The determination of the question as to laches *vel non* proceeds in the light of the circumstances of each case. Lapse of time is only one, and not ordinarily the controlling or most important one, of the elements to be considered in applying the rule of laches as a defense in equity."

In determining the question of laches, it is also proper to take into consideration whether there has been such a change in conditions as to prejudice the right of one of the parties in making his defense and render inequitable the enforcement of the claim sought to be asserted. Speaking of this element, the Court, in the case of *Thomas v. MacNeill, supra,* said: "Laches generally involves such change in conditions as would render inequitable the en-

forcement of a claim, while no such change is necessary in order to create staleness of demand. However, they both fall within the same general principles of equity, and the distinctions are of little practical importance. 21 C: J., 211. There is no fixed rule as to what constitute laches or staleness of demand. All the circumstances of each case as it arises must be taken into consideration, and each case will be decided upon its own facts; such decision being largely in the discretion of the chancellor."

In the case of *Edwards v. Johnson*, 90 S. C., 90, 72 S. E., 638, 644, the Court said: "In order to constitute laches, there must be shown, not merely neglect for a time to enforce a legal or equitable right, where such neglect is for a period short of that which is a bar under the statute of limitations, but it must further be made to appear that such delay was accompanied either by a failure to perform some legal duty, whereby prejudice has resulted to the person pleading such neglect, or that such delay was accompanied by some act on the part of the person so negligent, which operated to mislead the person pleading such neglect, to his prejudice to such an extent that it would be unjust and inequitable thereafter to permit such negligent party to enforce such right."

The foregoing excerpt from the case of *Edwards v. Johnson,* was quoted with approval in the recent case of *Whitlock v. Creswell,* 190 S. C., 314, 2 S. E. (2d), 838.

We shall briefly review several of the cases showing the application of the foregoing principles.

The case of *Montgomery v. Cloud,* 27 S. C., 188, 3 S. E., 196, was an action for an accounting by the heirs-at-law against an administrator. The administration was granted in 1861. In 1868 the administrator made his first and only return. The action for accounting was commenced in 1884, or sixteen years after the return. It was held that the action was not barred by the statute of limitations or the defense of laches.

In the case of *Thomas v. MacNeill, supra,* an action for an accounting was instituted against a guardian, a proceeding

similar to the one under consideration. The guardian was appointed in 1898. The ward became of age in 1905. In 1909 she signed a release, acknowledging full receipt of the guardianship funds and discharging the guardian from any further liability. There was no final accounting or proceeding in the Probate Court. The ward died in 1919 and the proceeding for an accounting was commenced in 1924. The Court held that the action was barred by laches. In reaching this conclusion, the Court considered not only the lapse of time, but the unusual intelligence of the ward, the fairness of the settlement made, the satisfaction of the ward with same, her release, and the failure of the ward to complain during her lifetime.

The case of *Bell v. Mackay,* 191 S. C., 105, 3 S. E. (2d), 816, involved an action for an accounting against the administratrix of a deceased administrator and the surety. The administrator was appointed nineteen years before the action was commenced and the final and only return was made seventeen years prior to the commencement of the action. Most of the records had been lost or could not be found, the administrator had died, the Probate Judge had died, and there were other circumstances which rendered it inequitable to require an accounting. From all the circumstances, the Court held that the action was barred by laches. Also, see the subsequent case of *Lazenby v. Mackey,* 196 S. C., 507, 14 S. E. (2d), 12, where it was held that claims of creditors which were not sued on until eight years after administrators filed their first return were not barred by laches.

In the recent case of *Fallaw v. Oswald, supra,* it was held that a married woman by permitting legal title to her proportionate interest in land to remain in her husband as trustee from 1916 to 1938, was not precluded by laches from asserting her interest in the land as against husband's judgment creditor, where creditor had not been prejudiced by acts of the married woman. The Court said: "One of the constituents of laches is injury or prejudice to third persons in the event relief is granted to the complainant."

When the circumstances of this case are considered in the light of foregoing principles, we do not think that the claims of respondents are barred by laches.

Although there was a period of twelve years between the time Leverne Lyerly reached twenty-one and the commencement of this action and a period of seventeen years from the time Kirtain Lyerly reached his majority until the commencement of this action, several years of this interval were consumed in the prior litigation. During the greater portion of this time they were not living in Florence County. David Lyerly died in 1922, just before reaching his majority, and the record does not disclose when his administrator was appointed. All of these minors had only a very meagre education. It is fair to assume from all the circumstances that each was unfamiliar with his rights or interest.

This delay has not prejudiced appellants. The amount received by the guardian is not disputed, nor the fact that he has never undertaken to render any accounting to the Probate Court. The only reason assigned by him for not paying over these funds to his wards is that the money was used for their support and maintenance. Upon this issue, both he and his wife, who obviously were the most material witnesses, testified fully at the reference. It is true that the attorney by whom he claims he was advised and the Probate Judge are dead, but they could not have thrown any light on this issue.

In addition to the foregoing, the conduct of the guardian exhibits a most flagrant disregard of his trust. He purchased the real estate in his own name for far less than its value and made no effort to comply with his bid. When called upon to account for his conduct in this respect, he settled with those complaining, but made no effort to protect those for whom he was acting as guardian. Whatever may have been the motive in his conduct, it would be most inequitable to now allow the guardian to escape liability to respondents on the ground of laches.

Our attention is called by appellants to the following statement of this Court in the previous case: "The petitioners, each of them, knew of their father's estate and each knew that they had received no benefit from it, therefore, it was their duty and their responsibility to inquire into the matter of their father's estate upon reaching twenty-one years." But this language must be taken in connection with the issue then before the Court, namely, whether these minors were barred by the statute of limitations in attacking the sale of the real estate on the ground of fraud and on that issue the rights of third parties were involved.

In concluding our discussion of the question of laches, we wish to point out that the guardian has never undertaken to make a final and complete settlement with Kirtain Lyerly. While he contends that there was paid to Kirtain his full share of the proceeds of the insurance and personal property, he admits that he has never made any settlement as to the real estate. Therefore, we are not confronted with a case where the guardian has done an act purporting to be a final execution of his trust and which had the effect of the guardian disclaiming any further fiduciary relationship. For this reason, the principles laid down in *Owens v. Watts*, 24 S. C., 76, and similar cases are not applicable to the claim of Kirtain Lyerly.

The remaining question is whether interest should be allowed on the penalty of the bond, and, if so, the time when it should commence. The Court below allowed interest on the penalty from September 6, 1920 (the date Kirtain Lyerly came of age) to June 23, 1941, the date of the decree. As to the surety, we think this was error. Prior to the commencement of this action no steps were ever taken by respondents to secure an accounting. Nor was any demand made upon the surety. The amount for which the guarlian is liable has, therefore, never been ascertained except in this action, and the purpose of this action is to obtain judgment against the surety for the amount so ascertained. The liability of the surety may be thus determined under

our practice. *Beatty v. National Surety Co.,* 132 S. C., 45, 128 S. E., 40; *Morris v. Maryland Casualty Co.,* 187 S. C., 150, 197 S. E., 505.

Under these circumstances we do not think that the ██ ██ obligation of the surety to pay arose until a breach of duty by the guardian and the amount of the resultant loss were established. If such loss equals or exceeds the penalty, the surety is liable for interest on the penalty only from the time when his obligation to pay arose. Of course, the guardian is liable for interest on the funds in his hands, and the liability of the surety is co-extensive with that of the guardian up to the amount of the penalty of the bond.

We are not called upon in this case to pass upon the time when interest would commence to run on the penalty where a loss exceeding the penalty is made known to and demand made upon the surety prior to suit on the bond.

The authorities on this question are collected in 55 L. R. A., at page 392, and are in accord with the foregoing conclusion. The liability of the surety is stated in 25 American Jurisprudence, 126, as follows: "The amount of damages recoverable against the sureties on a guardian's bond is the balance shown to be due by the guardian's account, if no part of it has been paid, but not exceeding the penalty of the bond * * * according to some decisions, the sureties are also liable for interest on the amount of the liability from the time that it was ascertained, even though in excess of the penalty."

The foregoing views are also supported by the following decisions from this State: *Richardson v. Richardson,* McMul. Eq., 103; *Cruger v. Daniel,* McMul. Eq., 157; *Harper v. Barsh,* 10 Rich. Eq., 149; *Stroble v. Large,* 3 McCord, 112; *Dial v. Gary,* 27 S. C., 171, 3 S. E., 84; *Ellis v. Saunders,* 34 S. C., 236; 13 S. E., 417. While these decisions do not involve bonds of guardians, they are analogous in principle.

The Supreme Court of Florida has recently passed upon the precise question now under consideration in the case of

*American Surety Co. of New York v. Hayden,* 112 Fla., 17, 150 So., 114, and reached the same conclusion herein expressed.

In the case of *Leaphart v. National Surety Co.,* 167 S. C., 327, 166 S. E., 415, relied on by respondents, the amount for which the surety was responsible was known to all parties and demand made upon it prior to the commencement of the action. The facts are thus different from those we are now considering.

We hold that the guardian is liable to Leverne Lyerly and the estate of David Lyerly for their proportionate part of the insurance and the proceeds of sale of personalty aggregating as to each $340.00, or as to both $680.00. He is also liable to each of the three respondents for his proportionate part of the proceeds of the sale of the real estate. *Gray v. Brown,* 1 Rich., 351; *Pratt v. McJunkin,* 4 Rich., 5; *Jennings v. Parr,* 62 S. C., 306, 40 S. E., 683. As against the surety, in fixing such share it is unnecessary to determine the exact value of the real estate. Giving the surety the benefit of fixing such value at $3,200.00, the amount of the bid, the share of each child in the proceeds of the sale of the real estate would be approximately $237.00, or a total of $711.00 for all three respondents. When the interest of all the respondents in the proceeds of the sale of the real estate, amounting to $711.00, is added to the interests of Leverne Lyerly and the estate of David Lyerly in the insurance and proceeds of sale of personalty, amounting to $680-.00, we have the principal sum of $1,391.00 as the aggregate liability of the surety, exclusive of interest, as to all three respondents.

Under the circumstances, the guardian should account for interest on this amount. It is also unnecessary, as against the surety, to determine the exact period from which interest should commence to run. In no event would it commence later than when each minor attained his majority. The principal and interest on this basis would exceed the penalty of the bond.

But, as we have held, the interest would not commence to run on such penalty until the date of the decree of the lower Court. The measure of the liability of the surety is, therefore, the principal sum of $1,-500.00 with interest from June 23, 1941.

This disposes of the principal questions raised. There are several other questions raised by the exceptions.

It is contended that the Court erred in adjudging the guardian to be in default. We do not think so. It is further contended that the action should have been brought in the name of the Probate Judge. This question was not raised in the Court below and is not now properly before this Court.

We have carefully considered all exceptions.

It is the judgment of this Court that the judgment of the lower Court against the guardian is affirmed, and as to the surety is modified in accordance with the views hereinabove reached, and the case is remanded to the lower Court for entry of judgment in favor of respondents against appellant surety company in the sum of $1,500.00 with interest from June 23, 1941.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES concur.