17070

ABRAHAM J. HEMINGWAY, WADDELL HEMINGWAY and LILA HEMINGWAY ROBINSON, Appellants, v. STERL MENTION, Respondent

(89 S. E. (2d) 369)

*Messrs. McDonald, McGowan & McDonald,* of Florence, *for Appellants,*

*Messrs. James B. Morrison,* of Georgetown, and *Buist & Buist,* of Charleston, *for Respondent,*

October 4, 1955.

PER CURIAM.

This action in equity was commenced by service of summons and complaint upon the respondent on July 14, 1951. It was alleged in the complaint that A. J. Hemingway died intestate in 1916 seized and possessed of a tract of land in Georgetown County containing 100 acres and leaving as his sole heirs at law four children, including the three appellants and another daughter, Adelaide Hemingway, who married a Davis and died sometime after the year 1941; the land was sold for delinquent taxes for 1930 to the County Forfeited Land Commission which, on March 5, 1935, conveyed 50 acres thereof to Adelaide, which is described by a surveyor's plat which was made on February 21, 1935; on November 26, 1941, Adelaide conveyed the 50-acre tract to the respondent; grounds of invalidity of the tax sale and

deed are alleged, the first, and the only one argued before us on appeal, being that the tax sale which was in 1932 was in the name of A. J. Hemingway who had died in 1916; the plaintiffs (now appellants) are the owners of an undivided three-fourths interest in the 50 acres of land and the defendant (now respondent), by reason of the deed from Adelaide, is the owner of an undivided one-fourth interest; the latter has been in possession since the year 1942 and is liable for rent and for the cutting of timber from the land. The prayer of the complaint was for judgment of invalidity of the tax deed and the subsequent deeds to the property, for partition of it and for an accounting by respondent for the proceeds of the sale of timber which he cut and for rent of the land for the nine years during which he had been in possession.

The answer admitted the death intestate of A. J. Hemingway seized and possessed of the tract of 100 acres and that Adelaide, his daughter, was one of his heirs at law, denied knowledge of other heirs and set up the deed to respondent which is referred to in the complaint; denied the invalidity of the tax sale and pleaded in bar of the action Act No. 259 of the Acts of 1947, 45 Stat. 530; during his nine years' possession, respondent made substantial improvements on the land of which appellants knew and made no objection, whereby they are estopped to now claim any interest; upon the tax sale and conveyance of the land by the sheriff to the Forfeited Land Commission, the latter was put in possession, which they held until conveyance of the 50-acre parcel to Adelaide and she thereafter continued in possession until conveyance by her to respondent in 1941, whereupon he entered into exclusive and adverse possession which has been continued and he pleaded the two year statute of limitations which was then Section 2827 of the Code of 1942; and finally the answer contains the plea of bona fide purchaser for value without notice or knowledge of the interests now claimed by the appellants.

The case was referred to a special referee who took the evidence and made report wherein it was recommended that the complaint be dismissed. Upon exceptions thereto, the report was confirmed by the circuit Court and this appeal followed.

Appellants have principally argued the following propositions, in substance: (1) the tax sale and deed were invalid because the property was assessed against the deceased former owner, instead of against his heirs, although he had been dead for about fifteen years; and (2) Adelaide could gain no advantage over her cotenants, who were the other heirs at law of her deceased father, by reason of her acquisition as the result of the tax sale. (However, she did not buy at the tax sale and she paid nothing for the deed to her, which she received as a gift from the tax purchaser.)

The first proposition was well established before the Act of 1947 which is now Sections 65-2769 and 65-2769.1 of the Code of 1952. *Osborne v. Vallentine*, 196 S. C. 90, 12 S. E. (2d) 856. Annotation 119 A. L. R. 383. And the second proposition is also essentially sound. *Watson v. Little*, 224 S. C. 359, 79 S. E. (2d) 384; 14 Am. Jur. 123, Cotenancy, Sec. 54. But we think that the claims of appellants, however meritorious if they had been timely made, are barred by the long delay in the assertion of them and by the supervening circumstances, and that the judgment of the trial Court should be affirmed upon the ground of laches. This conclusion makes unnecessary decision of the other questions which have been argued. The facts upon which it rests will be briefly stated.

The evidence established the inaccuracy of the family history which was alleged in the complaint. The appellants and Adelaide were the four children of a second marriage of A. J. Hemingway. By a former marriage he had ten children, only the names of whom appear with any degree of certainty in the testimony. Whether living or dead with or without surviving children or other heirs, and their whereabouts, were not established.

The land was abandoned when sold for taxes and the former relatively small cultivated area was growing up in pine saplings and bushes. The family had moved away in 1924. When the land was not redeemed within the statutory period after the tax sale, a neighbor bargained to purchase it from the Forfeited Land Commission, had it surveyed and divided into two parcels, at his expense, and at his request the commission conveyed half of it to his son (which parcel is not involved in this litigation) and the other half to Adelaide as a gift. These deeds were made and recorded in 1935. Afterward, in 1941, Adelaide sold her 50 acres to the respondent for $200.00 which the referee and Court concurrently found by the preponderance of the evidence was the reasonable market value of it at that time. (Respondent had rented the land from Adelaide during the preceding three or four years and paid the annual rental to her as the sole owner.) During respondent's subsequent possession of almost ten years before action was brought he cleared and put under cultivation additional acreage, to the total of about fifteen acres, and has obtained a valuable tobacco allotment, to which the land was not formerly entitled; he also erected a substantial building with concrete floor which he uses as a motor repair garage. Its value is about $500.00. In its present state of cultivation, its tobacco allotment and improvements and by reason of the inflation of land values, the property is now worth approximately $5,000.00.

The record indicates that appellants were minors when their father died in 1916, but they have not argued that or any other legal disability for any time during the long period that they slept on their rights. Nor have they offered any explanation of what we therefore find to have been unreasonable delay in the assertion of their claims. Their father died intestate in 1916, as said, and the land stayed on the tax books in his name until it was sold in 1932 under execution for unpaid taxes for the year 1930, although the law required that it be returned by the owner or owners for assessment. It was not redeemed from the

Forfeited Land Commission and after about three years they agreed to sell it to the neighboring landowner who gave half of it to Adelaide and directed that a deed be made to her. The respondent, who subsequently purchased from her for value in 1941 and has greatly improved the property, must be protected or the fruits of his husbandry and thrift be lost to him. Contrary result would violate the maxim that equity aids the vigilant and could be reached only in disregard of the doctrine of laches. It is seen from the foregoing dates that thirty-five years elapsed after the inheritance by appellants of interests in the land before they brought this action in 1951, which removes from consideration any disability of minority which may have existed; and the tax sale was almost twenty years before action was brought.

Laches is defined in 2 Bouv. Law Dict., Rawle's Third Revision, p. 1820, as unreasonable delay; neglect to do a thing or to seek to enforce a right at a proper time; and as neglect to do what in law should have been done, for an unreasonable and unexplained length of time and under circumstances permitting diligence, for which there is cited *Babb v. Sullivan,* 43 S. C. 436, 21 S. E. 277. For the following Bouvier cites at page 1823. *Willard v. Wood,* 164 U. S. 502, 17 S. Ct. 176, 41 L. Ed. 531: "Even though laches is not pleaded or the bill demurred to courts of equity may withhold relief from those who have delayed assertion of their claims for an unreasonable time." The latter is also the holding of *Cook v. Knight,,* 106 S. C. 310, 91 S. E. 312.

*Babb v. Sullivan, supra,* is a well-considered and frequently cited case in which laches was held to bar amendment of an execution after nine and a half years delay. From it we quote the following [43 S. C. 436, 21 S. E. 279]:

"As a definition of 'laches', however, it is sufficiently correct to say that it is the neglecting or the omitting to do what in law should have been done, and this for an unreasonable and unexplained length of time, and in circumstances which afforded opportunity for diligence. This definition will be

found adequate as a test to be applied to the vast majority of cases. The doctrine embraced in it is in accordance with the principles and the practice of courts of equity, which have from the beginning held themselves ready to aid suitors who come in good conscience, good faith, and with diligence; and from the beginning they have discountenanced stale demands, and refused relief from the effect of negligence and inexcusable delay."

The following is from 30 C. J. S., Equity, § 113, pp. 524, 525:

"The doctrine of laches has existed since the beginning of equity jurisdiction. Its existence is independent of statutes of limitation. The doctrine of laches is based on the injustice that might result from the enforcement of long neglected rights, the difficulty, if not the impossibility, of ascertaining the truth of the matters in controversy and doing justice between the parties, and on grounds of public policy, its aim being the discouragement, for the peace and repose of society, of stale and antiquated demands. Laches is based on the maxims, Nothing can call equity into activity but conscience, good faith, and diligence, Equity aids the vigilant, not those who slumber on their rights. He who seeks equity must do equity, and, He who comes into equity must come with clean hands."

And this from the same text, § 115, pp. 528-529:

"There is no absolute rule as to what constitutes laches or staleness of demand, and no one decision constitutes a precedent in the strict sense for another; each case is to be determined according to its own particular circumstances. In other words, the question of laches is addressed to the sound discretion of the chancellor."

The equivalent of this quotation is found in the opinion in *Thomas v. MacNeill,* 138 S. C. 86, 135 S. E. 643.

Extensive reviews of our former decisions upon the subject of laches and examples of the application of the principle appear in *Bell v. Mackey,* 191 S. C. 105, 3 S. E. (2d) 816,

and *Lyerly v. Yeadon,* 199 S. C. 363, 19 S. E. (2d) 648, 655. Equity and justice require its application to the facts of the instant case. In addition to the other requirements, it fairly meets the following, as stated in *Lyerly v. Yeadon, supra:*

"In determining the question of laches, it is also proper to take into consideration whether there has been such a change in conditions as to prejudice the right of one of the parties in making his defense and render inequitable the enforcement of the claim sought to be asserted."

Although the decision of the following cited case did not depend upon the laches of the plaintiff, as this does, it was said in *Turpin v. Brannon,* 3 McCord 261, which is apt here:

"The plaintiff has certainly been very negligent in delaying so long to prosecute his claim. These stale demands are not to be encouraged. Nothing tends more to disturb the quiet and repose of the community."

Judgment affirmed.