19320

Oscar NEWBERRY, Appellant, v. Ola T. NEWBERRY, Respondent.
(184 S. E. (2d) 704)

*Messrs. Paul R. Hibbard and Edwin W. Johnson* of *Johnson & Smith,* Spartanburg, *for the Plaintiff-Appellant,* cite:

*Messrs. M. Noel Turner and Ben C. Harrison, Jr.,* of *Burts, Turner & Hammett,* Spartanburg, *for Respondent,* cite:

November 12, 1971.

BUSSEY, Justice:

In this action commenced on February 26, 1970, plaintiff-appellant sought to annul a marriage entered into between the parties at Mobile, Alabama on December 27, 1949, they having lived together as husband and wife for more than twenty years, but for brief interruptions. He asserted that the marriage was void because a divorce obtained by the defendant in Reno, Nevada in October 1949 was allegedly invalid for lack of jurisdiction. Defendant-respondent interposed a general denial; plead estoppel and laches; and that the plaintiff could not collaterally attack the Nevada divorce. She also cross-claimed for support.

The matter was referred to the Master in Equity for Spartanburg County, who, after holding a hearing and taking considerable testimony, filed his report wherein he concluded that all defenses of the defendant should be sustained and recommended that a decree be entered declaring the marriage between the parties a good and valid one. He also recommended certain relief for the defendant on her cross-claim for support, and the master's report in its entirety, was confirmed by the lower court. From said order the plaintiff husband appeals on twenty stated exceptions, most of which are addressed to the court's failure to hold the marriage void and grant the prayed for annulment.

Defendant, a native of Newberry, South Carolina, was married in December 1926 to one Dr. John K. Wicker, who has been an incompetent and patient in the Veterans Hospital in Augusta, Georgia since August 1940. Prior thereto, he had been intermittently a patient in said hospital since September 1937.

Plaintiff and defendant became acquainted in Newberry in 1940 or 1941 and saw each other socially, in company with other people, on a few occasions prior to plaintiff's entry into the Army. Upon his return from the Army, about 1945, the parties started dating quite regularly, which continued until about May 1, 1949, when defendant, accompanied by her sister, drove to the State of Nevada where she obtained a decree of divorce from Dr. Wicker on October 17, 1949, on the ground of insanity. She admittedly returned to Newberry promptly after obtaining her decree. On December 27 of the same year the parties were married in Mobile, Alabama. Following the marriage they returned to South Carolina and lived as husband and wife in both Union and Spartanburg. In May 1954 the defendant sued the plaintiff for separate maintenance and as a defense he asserted that defendant's divorce from Dr. Wicker was invalid, with the result that his marriage to defendant was invalid. There was, however, a reconciliation and dismissal of the action. In September 1954 plaintiff brought an annulment proceeding again asserting the invalidity of the Nevada divorce. Within approximately a month another reconciliation occurred and the parties continued to live together as husband and wife until shortly before the commencement of the present action.

The defendant was admittedly a healthy, very attractive and beautiful woman when the plaintiff met, courted and married her, although she was eight years his senior. When this action was commenced she was 64 years of age and in poor health. She had undergone surgery for cancer, successfully so far as the record shows, but was suffering from a severe spinal condition with three degenerated discs. She had been advised by physicians to have surgery but was herself undecided thereabout. She was described by the plaintiff as a "semi-invalid". In contrast to the defendant's situation, the plaintiff is apparently healthy and has a lady friend in Florida who is the beneficiary of a Buick automobile furnished by the plaintiff. Plaintiff was asked if he

intended to marry this lady if successful in the instant suit and he replied, "I wouldn't doubt it a bit in the world."

The Nevada divorce action was commenced on July 5, 1949, after defendant had been continuously a resident of the State of Nevada for the six weeks period prerequisite under the law of the State of Nevada. In the latter part of July she and her sister returned to Newberry where defendant resumed her former employment. In October defendant made a relatively brief trip to Reno by air for the purpose of the hearing in her divorce case, promptly returning to South Caolina where she has resided ever since.

Dr. Wicker was properly served in the divorce action and the Nevada court appointed as his guardian *ad litem* a competent attorney who appeared and actively represented Dr. Wicker, addressing interrogatories to the Medical Officer in charge and Manager of the Veterans Hospital in Augusta, and contacting members of Dr. Wicker's family in an effort to ascertain any possible defenses and to protect his interests.

The basis of attack on the Nevada divorce decree is the contention that defendant went to Nevada for the sole purpose of obtaining a divorce, with no intention of remaining there indefinitely, and, hence, never acquired a bona fide domicile in Nevada which would give the court jurisdiction to grant a valid divorce.

Strongly relied on as showing a lack of intent to establish a bona fide domicile in Nevada are the defendant's return to Newberry in late July 1949 and her return to South Carolina shortly following the divorce decree. The defendant, in her testimony, offered explanations of both of these returns, tending to show that such were not inconsistent with an intent on her part to establish a bona fide domicile in Nevada. There are admittedly some conflicts in her testimony, and understandably so after a lapse of more than twenty years, as to precisely what was in her mind from time to time during the summer and fall of 1949.

The master concluded, however, that the plaintiff had failed to carry the burden of proving the invalidity of the Nevada divorce decree as contended and the lower court concurred. While the issue is a close one, a review of the record does not convince us that we would be warranted in holding this concurrent finding of fact to be without evidentiary support or against the clear preponderance of the evidence.

But even if it be conceded that there was error on the part of the master and the lower court in the foregoing fact finding, we, nevertheless, conclude that the plaintiff is barred by laches from prevailing in this action. The record leaves no doubt that the plaintiff was fully acquainted in the year 1949 with all of the facts and circumstances leading up to and attendant upon the Nevada divorce decree of the defendant. There was testimony by the defendant, denied by the plaintiff, that he urged or instigated the divorce. Admittedly, he wrote the defendant virtually every day she was in Nevada and talked with her from time to time on the telephone. The defendant testified that when she first went to Nevada she was undecided as to what she wanted to do with the remainder of her life and planned to stay in Nevada indefinitely. The testimony of the defendant and admissions on the part of the plaintiff point unerringly, we think, to the conclusion that during the summer and fall of 1949 plaintiff importuned the defendant to return to South Carolina for the purpose of marrying him when her divorce was complete. The record as a whole gives rise to the reasonable inference that, but for the importuning on the part of the plaintiff, the defendant would likely have taken a permanent job in Nevada and remained there indefinitely, with the result that her divorce would never have been vulnerable to an attack for alleged lack of jurisdiction.

The probability of prejudice to the defendant from the long delay on the part of the plaintiff in attacking the validity of the divorce decree is, we think, obvious. The passage

of time almost invariably makes the defense of any action more difficult. Moreover, had plaintiff timely and successfully attacked the Nevada divorce twenty years ago, the defendant was then still healthy enough, young enough and pretty enough to make her permanent residence in Nevada or some other state where her divorce could not be questioned and where she could eventually build for herself a happy life. Instead of timely attacking the divorce decree, the plaintiff, with full knowledge of the facts, has for twenty years enjoyed the rights and privileges as the husband of the defendant, and only now that she is elderly and in ill health does he seek to cast her aside for another woman. He is, we think, clearly entitled to no relief from the Court.

In *Grant v. Grant,* 233 S. C. 433, 105 S. E. (2d) 523, and again in *Jannino v. Jannino,* 234 S. C. 352, 108 S. E. (2d) 572, the following was quoted with approval:

" 'The safety of society demands that one who seeks to overthrow an apparently valid decree of divorce should proceed with the utmost promptness upon discovery of facts claimed to show its invalidity'."

We quote the following from *Jannino v. Jannino, supra,*

"The determination of the question of laches proceeds in the light of the circumstances of each case, taking into consideration among other things whether the delay has worked injury, prejudice or disadvantage to one of the parties. *Wallace v. Timmons,* 232 S. C. 311, 101 S. E. (2d) 844. It is impossible to lay down any inflexible rule. The Court is vested with a wide discretion. *Ham v. Flowers,* 214 S. C. 212, 51 S. E. (2d) 753, 7 A. L. R. (2d) 1124." See the *per curiam* opinion in *Hemingway v. Mention,* 228 S. C. 211, 89 S. E. (2d) 369, for a most interesting and comprehensive discussion of the principles and application of the doctrine of laches.

We are convinced that the facts in the instant case call for the application of the doctrine of laches and the denial of any relief to the plaintiff. Such conclusion renders un-

necessary discussion of the other grounds upon which the report of the master and the order of the lower court denied relief to the plaintiff.

The lower court, *inter alia,* awarded the defendant counsel fees in the amount of $300, which amount the plaintiff contends was excessive. He has failed to demonstrate, however, wherein such was excessive or constituted an abuse of discretion on the part of the lower court.

The order of the lower court, to the extent that it granted affirmative relief to the defendant and held the plaintiff barred from any relief under the doctrine of laches, is hereby affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.