503 S.E.2d 471

**TNS MILLS, INC., Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant/Respondent,**

and

**County of Cherokee, Cherokee County School District No. 1, and Cherokee County Council, Appellants.**

No. 24810.

Supreme Court of South Carolina.

Heard Dec. 4, 1997.

Decided July 13, 1998.

---

612

614

Frank W. Cureton and Margaret C. Pope, of Sinkler & Boyd, P.A., Columbia, for appellants.

General Counsel Harry T. Cooper, Jr., Chief Counsel for Revenue Litigation Ronald W. Urban, and Counsel for Revenue Litigation Sarah G. Major, all of the South Carolina Department of Revenue, Columbia, for appellant/respondent.

Moffatt G. McDonald, of Haynsworth, Marion, McKay & Guérard, L.L.P., Greenville, for respondent.

WALLER, Justice:

In 1992, respondent TNS Mills, Inc. filed amended tax returns for tax years 1985 through 1991 asking for exemptions for its pollution control equipment. After a hearing, the Commission of the Department of Revenue[1] refused TNS's request. The circuit court reversed the Commission's decision. This appeal is from the order of the circuit court. We reverse.

---

1. Until its name was changed in 1993, the Department was known as the South Carolina Tax Commission. In 1993, it became the South Carolina Department of Revenue and Taxation, and in 1996, its name was shortened to the South Carolina Department of Revenue. Until February 1, 1995, the Department was governed by three Commissioners. To avoid confusion, this opinion will refer to the agency as the Department and the three men who initially heard the case as the Commission.

## FACTS

TNS operates greige mills in Spartanburg and Cherokee Counties. TNS was entitled to an exemption for pollution control equipment for the tax years 1986 through 1991 pursuant to S.C.Code Ann. § 12–37–220(A)(8) (Supp.1980–1992). Property tax returns have a line on which taxpayers report certain pollution control equipment in order to have that amount exempted from the assessed value of their property. On its tax returns for 1986 through 1991, TNS left these lines blank.

Pollution control equipment typically forms an integral part of the production process in a greige mill; therefore, assigning a separate value to a greige mill's pollution control equipment is difficult. To remedy this problem, the South Carolina Textile Manufacturer's Association (SCTMA) and the Department negotiated and agreed in the mid–1980s that the Department would reduce the assessed value of greige mills by 20%. TNS was not a member of the SCTMA, and the Department reproachably did not publish the policy, so TNS was unaware of the 20% compromise. The Department assessed TNS's greige mills at 100% of their value throughout the late 1980s.

In 1992, TNS filed amended property tax returns with the Department claiming a property tax exemption for pollution control equipment for tax years 1986 through 1991. The Property Division of the Department (Property Division) granted the exemptions and mailed amended assessment notices to Spartanburg and Cherokee Counties, thereby reducing the assessed value of TNS's mills and entitling TNS to a refund. Spartanburg County issued TNS a refund in excess of $400,000. Cherokee County (County) and Cherokee County School District Number 1 (School District) opposed the granting of the exemptions and appealed to the Commission. After a hearing, the Commission determined TNS was not entitled to the retroactive property tax exemptions it was trying to claim. On appeal, the circuit court reversed the decision of the Commission. County, School District, and Department, referred to collectively hereafter as appellants, are appealing this decision.[2]

---

2. The only issue about which appellants and appellant/respondent disagree is whether the 20% policy was a valid exercise of the Depart-

## ISSUES

I. Did TNS fulfill the statutory requirements for applying for the pollution control exemption when it filed its original tax returns?

II. Did the Department have the authority under section 12–4–730 of the South Carolina Code to grant TNS a retroactive exemption?

III. Does section 12–37–975 of the Code give the Department the authority to grant a retroactive exemption?

IV. Does section 12–47–420 of the Code allow a refund?

V. Did the Commission's decision violate equal protection?

VI. Did the Commission err when it refused to let James Brodie testify?

VII. Was the 20% policy a valid exercise of the Department's authority?

## DISCUSSION

### I. Original Tax Returns

The circuit court found TNS did in fact timely apply for the exemptions for pollution control equipment by merely signing its tax returns for the years in question. Appellants argue this was error. We agree.

 Initially, this issue should not have been addressed by the circuit court because TNS admitted in its brief to the Commission that it filed its tax returns for the years in question without claiming an exemption for pollution control equipment. An issue conceded in a lower court may not be argued on appeal. *Ex parte McMillan,* 319 S.C. 331, 461 S.E.2d 43 (1995). Accordingly, the circuit court erred when it considered this issue.

If the issue had been disputed, the findings of the circuit court would be erroneous. The General Assembly has the power to provide for methods and procedures in applying for exemptions for the purpose of property taxes. S.C. Const. Art. X, § 3. According to the General Assembly, a taxpayer

ment's authority. With regard to this issue, the Department is a respondent.

does not automatically get an exemption for pollution control equipment, but must apply for it. During the tax years in question and at the time TNS filed its amended returns, a taxpayer was required to file an application before the sixteenth day of the fourth month after the close of the accounting period regularly employed by the taxpayer for income tax purposes to claim an exemption for pollution control equipment. S.C.Code Ann. § 12–4–720 (Supp.1991–1992) (amended in 1994 and 1995); S.C.Code Ann. § 12–3–145(B) (Supp.1985–1990) (repealed 1991). The Department was required to determine annually which exemptions it would grant and notify the appropriate county officials by June first of each year. S.C.Code Ann. § 12–4–710 (Supp.1991–1992); S.C.Code Ann. § 12–3–145(A) (Supp.1985–1990) (repealed 1991).

The burden is on claimants to prove their rights to an exemption by bringing themselves clearly within the conditions imposed by the statute. *York County Fair Assoc. v. South Carolina Tax Comm'n,* 249 S.C. 337, 341, 154 S.E.2d 361, 363 (1967); *see also Asmer v. Livingston,* 225 S.C. 341, 82 S.E.2d 465, 466 (1954) (a refund of taxes is solely a matter of governmental grace, and taxpayers seeking such relief must bring themselves clearly within the terms of the statute authorizing a refund). One is estopped to claim an exemption with respect to property included in the list of taxable properties and for which no exemption has been claimed before the taxing officers. 84 C.J.S. *Taxation* § 226 (1954).

TNS did not clearly comply with the requirements for applying for an exemption. Taxpayers may apply for exemptions separately from their tax returns, thereby filing two forms instead of one. Or, as most taxpayers do, they may apply for an exemption on their tax returns. TNS did not file a separate application, nor did it apply on its tax returns. As noted above, Schedule 55, Gross Plant Account Summary, appears on TNS's filed tax forms. This schedule instructs the taxpayer to list gross capitalized cost of seven different items in order to have their value exempted from the taxpayer's taxable property. Item number six is "Water & Air Pollution Equip." In order to claim an exemption for this type of equipment, a taxpayer must indicate the value of the equipment on line six and attach a list of this type of equipment.

On all of its returns, TNS left item number six blank and did not attach a list, thereby including its pollution control equipment in its taxable properties. Clearly, TNS did not intend to apply for this exemption when it filed its tax returns.

The tax forms filed by TNS had the following preprinted language above the preparer's signature line: "By filing this return within the time prescribed by law, I hereby make application for exemption from county taxes in accordance with the provisions of Section 12–37–220(A)(7)(8) Code of Laws of South Carolina." Relying on the presence of preprinted language, the circuit court found, "TNS made a request for all exemptions for pollution control devices by executing this pre-printed form." Appellants argue this finding is erroneous. We agree.

The preprinted language has effect only if the taxpayer acts as the form requires by claiming an amount of exempted property on Schedule 55 and separately listing property. The presence of this language without the required information does not comprise an application for an exemption. Furthermore, testimony at the hearing revealed the purpose of the preprinted language was not to give the exemption to every taxpayer who signed a return, but to enable a taxpayer to apply for an exemption and file tax returns with the same form.

Accordingly, the lower court should not have decided this issue, and its finding that TNS timely filed exemption applications for tax years 1986 through 1991 was erroneous because TNS's tax filings were too incomplete to clearly satisfy the requirements of the code.

## II. Authority to Grant Retroactive Exemptions

The circuit court found the plain language and the history of S.C.Code Ann. § 12–4–730 (Supp.1992) gave the Department the authority to grant retroactive exemptions. Appellants argue this was error. We agree.

## A. Plain Language

Section 12–4–730 states,

The [Department], upon receipt of an application and upon proper investigation, may declare the real and personal

property of a property owner qualifying for an exemption from ad valorem taxation identified in this chapter as exempt and shall certify the exemption to the auditor's office in the county in which the property is located. Upon certification by the [Department], the auditor shall void any tax notice applicable to the property.

S.C.Code Ann. 12–4–730 (Supp.1992). In construing statutory language, the statute must be read as a whole, and sections which are part of the same general statutory law must be construed together and each one given effect. *Higgins v. State,* 307 S.C. 446, 415 S.E.2d 799 (1992). The Court must presume the legislature did not intend a futile act, but rather intended its statutes to accomplish something. *State ex rel. McLeod v. Montgomery,* 244 S.C. 308, 136 S.E.2d 778 (1964). The language of a tax exemption statute must be given its plain, ordinary meaning and must be strictly construed against the claimed exemption. *John D. Hollingsworth On Wheels, Inc. v. Greenville County Treasurer,* 276 S.C. 314, 278 S.E.2d 340 (1981).

TNS asserts the lack of deadline in section 12–4–730 means the Department can grant retroactive exemptions. However, this section must be read together with the other sections in Article 7, and nothing in this section modifies section 12–4–720(A)(2)'s mandatory deadline for applying for an exemption.[3] In fact, if 12–4–730 is interpreted as allowing retroactive exemptions, the mandatory deadlines set by the General Assembly are rendered meaningless. As the Commission noted, "[T]here would be no purpose in establishing deadlines if failure to meet them was of no consequence."

Furthermore, an interpretation allowing retroactive exemptions would not fit with the procedural scheme set out by the General Assembly. The Code requires the Department to

---

**3.** Section 12–4–720(A)(2) (Supp.1991–1992) states, "Owners of property exempt under [the pollution control exemption] **shall** file an application before the sixteenth day of the fourth month after the close of the accounting period regularly employed by the taxpayer for income tax purposes...." (emphasis added). Ordinarily, the use of the word "shall" in a statute means that the action referred to is mandatory. *South Carolina Dep't of Highways and Pub. Transp. v. Dickinson,* 288 S.C. 189, 191, 341 S.E.2d 134, 135 (1986). The plain language is clear; a taxpayer is required to apply for the exemption by the stated deadline.

make annual determinations concerning exemptions and to notify the appropriate county officials of what property was exempted from taxation by June first. S.C.Code Ann. § 12–4–710 (Supp.1992). The interpretation advanced by TNS would negate the purpose of notifying county officials by June first because the information given them would be worthless; the amount of exempted property, would change every time the Department granted a retroactive exemption.

The plain language of these Code sections, when read together, show the legislature intended to set clear deadlines for applying for exemptions as part of an overall plan to enable counties and school districts to plan budgets for each fiscal year. Any interpretation allowing the Department to grant exemptions after the deadline would negate the benefit of this plan.

## B. Statutory History

### 1. Brodie's Interpretation

In support of its construction of the statute, TNS points to the interpretation James Brodie, the Director of the Property Division, gave to section 12–4–730's predecessor, section 12–3–145(B). According to Brodie's July 3, 1990 memo which was sent to all assessors, auditor, treasurers, and tax collectors, the new amendments [4] to this section gave the Department the authority to accept applications for exemptions at any time. This amendment did not give the Department the authority to accept late applications, but merely clarified that it had the authority to decide whether any property, not just that of churches, parsonages, and burying grounds, met the requirements for exemptions.

Although Brodie believed the Department had the authority to grant retroactive exemptions, and exemptions may have been granted under this erroneous view, neither the Commission nor the courts are bound by his erroneous inter-

---

4. TNS incorrectly argues Brodie's memo referred to the 1991 revision which moved the procedure for applying for exemptions from section 12–3–145 to sections 12–4–710 through –760. However, Brodie's memo was written in 1990; the amendments he was addressing in his memo could not have been the 1991 revisions which were not effective until July 1, 1991.

pretation. *Fennell v. South Carolina Tax Comm'n,* 233 S.C. 43, 48, 103 S.E.2d 424, 427 (1958); *Colonial Life & Accident Ins. Co. v. South Carolina Tax Comm'n,* 233 S.C. 129, 151, 103 S.E.2d 908, 919 (1958).

### 2. Other Statutory History

According to the circuit court, "[t]he history of this statute demonstrates that, at one time, almost all manufacturers were late in filing their applications and that this statute was designed and amended to give [the Department] the authority to accept late applications." We disagree.

As noted earlier, during the tax years in question, a taxpayer who wished to file an application to exempt pollution control equipment had to do so by the sixteenth day of the fourth month after the close of the accounting period regularly employed by the taxpayer for income tax purposes.[5] S.C.Code Ann. § 12–3–145(B) (Supp.1985–1990) (repealed 1991). The Department was required to determine annually which exemptions it would grant and notify the appropriate county officials by June first of each year. S.C.Code Ann. § 12–3–145(A) (Supp.1985–1990) (repealed 1991). For good cause shown, the Department could waive the required deadline for applying for exemptions, but it could not extend the deadline beyond the penalty date for taxes due, and the late taxpayer was penalized. S.C.Code Ann. § 12–3–145(F) (Supp.1985–1990).

In 1985, the legislature added language to section 12–3–145(B) which allowed the Department to declare churches, parsonages, and burying grounds exempt. Act No. 3, 1985 S.C.Acts 5 (effective March 1, 1985). Two months later, the legislature added a provision allowing churches and parsonages to file an application for an exemption at any time. Act No. 53, 1985 S.C.Acts 95 (effective April 29, 1995, codified at S.C.Code Ann. § 12–3–146 (Supp.1985)).

Testimony at the hearing revealed the procedure for applying for exemptions outlined in section 12–3–145 created an administrative problem because the deadline for applying for an exemption was two weeks earlier than the deadline for filing returns. Since as a practical matter, most taxpayers

---

5. For calendar year taxpayers like TNS, the deadline for applying for an exemption would be April 15.

requested their exemptions with their returns, the Department would have to deny exemptions for being late. Then the General Assembly would grant extensions, and the Department would then grant the exemptions it had previously denied.

In 1985, the General Assembly extended the deadline for filing exemption applications for the 1981, 1982, 1983, 1984, and 1985 tax years until July 1, 1985. Act No. 3, 1985 S.C.Acts 5. In 1987, the deadline for applying for exemptions for the 1985, 1986, and 1987 tax years was extended until July 1, 1987. Act No. 64, 1987 S.C.Acts 126. In 1988, the deadline for the 1985, 1986, 1987, and 1988 tax years was extended until July 1, 1988. Finally, in 1990, the General Assembly granted its last extension, postponing the deadline for exemption applications for the tax years 1988 and 1989 until July 1, 1990.

In 1991, the legislature revised and recodified the procedure for applying for property tax exemptions. Act No. 50, 1991 S.C.Acts 152 (codified at S.C.Code Ann. §§ 12–4–710 to 760 (Supp.1991)). Substantively, the requirements remained the same. However, section 12–3–146, which allowed churches and parsonages to apply for an exemption at any time, was omitted. Section F, which gave the Department the discretion to accept late applications for exemptions before the penalty date for paying taxes, was also omitted. After the 1991 revision, the legislature has not again extended the deadline for applying for exemptions.

Contrary to the lower court's holding, the legislative history of these statutes does not show the Department has the authority to accept late applications; in fact, the only inference arising from the legislative history is that only the General Assembly may extend the application deadline. The legislative history indicates the General Assembly did not want the deadline for applying for extensions to be discretionary, so it took away the Department's authority to grant even short term extensions. Furthermore, since the General Assembly has not granted another extension since before the 1991 revision, we can infer it intended for the revision to end the practice of granting extensions.

Since nothing in the plain language or the history of these procedural statutes gives the Department the authority to

grant retroactive exemptions, the lower court erred in finding the Department could do so.

*III. Section 12–37–975*

The circuit court found that S.C.Code Ann. § 12–37–975 (Supp.1992) gave the Department the discretion to accept amended returns filed after the date they were due and that the Department properly exercised its discretion here. Appellants argue the court should not have reached this issue because it was not raised to the Commission. We agree. This issue was neither raised to nor ruled on by the Commission; therefore, the circuit court erred in addressing it. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n*, 318 S.C. 502, 458 S.E.2d 542 (1995) (the circuit court ordinarily may not consider issues that were not raised to and ruled on by the administrative agency).

If the issue had been raised, this section does not provide authority for granting the relief requested by TNS. Section 12–37–975 provides:

> The Department of Revenue may permit any person to substitute an amended return for the original return up to the last day prescribed for filing the return, including any extension of time granted by the department. The department in its discretion may accept or reject an amended return filed after the time prescribed for filing the return.

S.C.Code Ann. § 12–37–975 (Supp.1992). Statutes, as a whole, must receive practical, reasonable, and fair interpretation, consonant with the purpose, design, and policy of lawmakers. *Whiteside v. Cherokee County Sch. Dist. No. 1*, 311 S.C. 335, 428 S.E.2d 886 (1993). Subtle or forced construction of statutory words for the purpose of expanding a statute's operation is prohibited. *Walton v. Walton*, 282 S.C. 165, 318 S.E.2d 14 (1984).

The circuit court failed to recognize the distinction between amended returns and applications for exemptions. This section may allow the Department to accept an amended tax return, but to interpret it to allow them to grant a retroactive exemption effectively writes the deadlines for applying for an exemption out of the Code. Furthermore, the circuit court's interpretation creates an absurd distinction; the

deadlines for applying for exemptions would apply to taxpayers who applied on separate forms, but the deadlines would not apply to taxpayers who applied on their tax returns. Consequently, if the issue had been preserved, the circuit court wrongly gave a forced interpretation to this section, thereby expanding its operation to allow TNS the relief it requested.

*IV. Section 12–47–420*

The circuit court relied on S.C.Code Ann. § 12–47–420 (Supp.1992) (repealed by Act No. 60, 1995 S.C.Acts 405) when it found in favor of TNS. That section stated:

Whenever after due hearing the Commission by majority vote shall determine that any tax has been paid under an erroneous, improper or illegal assessment, the Commission shall order the officer having custody of the tax so erroneously, improperly or illegally paid to refund it....

Appellants argue this issue is procedurally barred and the court's reliance on this statute was misplaced. We agree.

To the Commission, TNS argued this section supported its argument that the plain meaning of section 12–4–720(A) gave the Commission the authority to grant retroactive exemptions. TNS claimed that if the Department had the authority to grant a retroactive exemption, then this section provided for a refund. The Commission did not rule on the meaning of this section. Then, for the first time, TNS argued to the circuit court that this section standing alone allowed a refund based on *American Hardware Supply Co. v. Whitmire* because the assessment was erroneous. 278 S.C. 607, 300 S.E.2d 289 (1983). Since this issue was not raised to and ruled on by the Commission, it is procedurally barred. *Kiawah Resort Assocs. v. South Carolina Tax Comm'n*, 318 S.C. 502, 458 S.E.2d 542 (1995).

In any event, section 12–47–420 does not authorize a refund for TNS. The Court in *American Hardware* ruled a taxpayer who paid property taxes on exempt property during tax years 1974, 1975, and 1976 was entitled to a refund under section 12–47–420. During those years, taxpayers were not required to file an application in order to receive an exemption; by law, the property was automatically exempt. In that

case, the assessment of automatically exempt property was ruled to be erroneous, illegal and improper, and the taxpayer was granted a refund. Here, TNS's property was not automatically exempt; it was required to apply for an exemption which it failed to do. Consequently, its property was not exempt and it did not pay taxes on exempt property. The assessment of its property was therefore not erroneous, illegal or improper, and this statute does not authorize a refund.

## V. Equal Protection

The court below found that despite TNS's failure to meet the statutory requirements for an exemption, it could receive a retroactive exemption because it had been treated differently from other similarly situated taxpayers in violation of the equal protection clauses of the federal and state constitutions. U.S. Const. amend. XIV; S.C. Const. art. I, § 3. Appellants argue the lower court's ruling was erroneous because TNS's equal protection argument was procedurally barred and because TNS cannot establish a violation of equal protection. Even if this argument were not procedurally barred, we agree the lower court erred in finding an equal protection violation.

In order to establish an equal protection violation, a party must show that similarly situated persons received disparate treatment. *Grant v. South Carolina Coastal Council*, 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995).

TNS cannot show it is similarly situated to another group of taxpayers. The lower court believed TNS was similarly situated to two different groups of taxpayers. The first group identified in the order are TNS's competitors who received the benefit of the unpublished 20% policy. However, TNS is not similarly situated to this group; the group of competitors who benefitted from the 20% policy only received this benefit because they applied for the pollution control exemption. As it admitted to the Commission, TNS did not apply. If, for example, TNS had applied and been given a 10% exemption, it could claim it was treated differently from other similarly situated taxpayers. However, TNS did not apply, and it cannot complain of disparate treatment.

The second group of similarly situated taxpayers identified by the circuit court were other manufacturers who were

granted exemptions in spite of late applications. The record does not show these taxpayers and TNS were similarly situated. As noted earlier, the Property Division failed to enforce the deadline against taxpayers who applied for their exemptions when they filed their returns and therefore missed the April 16 deadline by two weeks. These taxpayers were not similarly situated to TNS who filed years, not weeks, after the deadline. Furthermore, the record contains no evidence that any taxpayer other than TNS received a refund as a result of the Property Division's interpretation.

Moreover, TNS cannot establish "arbitrary and purposeful discrimination" on the part of the Commission. As discussed earlier, the Department does not have the authority to waive the application deadline and annual determination requirements of Article 7. The Commission was correcting the erroneous view of the Property Division, not singling out TNS for unfair treatment. Neither the Commission nor the courts are bound by the previous erroneous interpretation of the Property Division. *Fennell v. South Carolina Tax Commission*, 233 S.C. 43, 48, 103 S.E.2d 424, 427 (1958); *Colonial Life & Accident Ins. Co. v. South Carolina Tax Commission*, 233 S.C. 129, 151, 103 S.E.2d 908, 919 (1958).

## VI. Exclusion of Witness James Brodie

During the hearing in front of the Commission, TNS offered the testimony of James Brodie, the Chairman of the Property Division Brodie authored the documents establishing the 20% standard exemption for pollution control equipment and establishing the Department's policy regarding retroactive tax exemptions. Brodie was also the employee who confirmed TNS's refund. The Commission did not allow Brodie to testify. The circuit court found "the Commission utilized an improper procedure for disqualifying a witness that would require a remand, at the very least." Appellants argue this finding was erroneous. We agree.

At common law, all witnesses were presumed to be competent except very young children.[6] *South Carolina Dep't of Social Servs. v. Doe*, 292 S.C. 211, 355 S.E.2d 543 (Ct.App. 1987). A witness has to be capable of expressing himself and

---

6. This hearing was held on March 24, 1994, before the South Carolina Rules of Evidence were adopted.

has to understand the obligation to tell the truth to be qualified to testify. *State v. Green*, 267 S.C. 599, 230 S.E.2d 618 (1976); *Abbott v. Columbia Mills Co.*, 110 S.C. 298, 96 S.E. 556 (1918). The determination of the competency of a witness is a matter that rests within the discretion of the trial court, or as here, the Commission; their determination should not be reversed absent a clear abuse of discretion. *In re Robert M.*, 294 S.C. 69, 362 S.E.2d 639 (1987).

At the hearing, Brodie's psychiatrist testified she did not believe Brodie would be a reliable witness because he was suffering from major depression and the stress of testifying would render him unable to speak. According to the psychiatrist, Brodie could not speak in stressful situations, and his anxiety would cause him to "say anything just to get out of the hot seat." She believed being forced to testify would be detrimental to his treatment. The Commission decided to exclude Brodie.

Although it did not make these arguments to the Commission, TNS now argues that a court cannot exclude a witness merely because of mental illness and that the psychiatrist did not state to a reasonable degree of medical certainty that Brodie would more likely than not lie. However, the Commission's decision to exclude Brodie was not an abuse of its discretion since the only testimony offered showed Brodie would have been unable to express himself on the stand and would have possibly not told the truth.

Also, TNS cannot prove it was prejudiced by the Commission's decision. First, it failed to make a proffer of what Brodie's testimony would have been. *See State v. Anderson*, 304 S.C. 551, 406 S.E.2d 152 (1991) (where there is no proffer of excluded testimony, the Court is unable to determine whether the complaining party was prejudiced by the refusal to admit the testimony into evidence). Second, the record indicates TNS requested that Brodie be allowed to testify by affidavit, answering questions submitted by the parties. Although TNS suggested this procedure, it did not avail itself of the opportunity to question Brodie in this manner as did appellants. Accordingly, since the Commission's decision was supported by the evidence and TNS cannot prove it was prejudiced, the circuit court erred when it found the Commission had abused its discretion by excluding Brodie.

*VII. 20% Policy[7]*

Appellants County, School District, and County Council argue the 20% policy on which TNS based its retroactive exemption is illegal. Since TNS should not have been granted a retroactive exemption, this issue is moot and need not be addressed.

## CONCLUSION

Accordingly, the opinion of the circuit court is reversed, and the Commission's decision that the pollution control exemptions may not be retroactively granted to TNS is reinstated.

**REVERSED.**

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.

---

7. Again, this is the only issue raised by appellants County, School District, and County Council with which the Department did not agree. Therefore, the Department will be a respondent with regard to this one issue.