627 S.E.2d 695

**Walter Ray STONE, Deceased, and
Bonnie L. Stone, Respondents,**

v.

**ROADWAY EXPRESS, Employer, and Old Republic
Insurance Company, Carrier, Appellants.**

No. 26113.

Supreme Court of South Carolina.

Heard Dec. 1, 2005.
Decided Feb. 13, 2006.
Rehearing Denied March 21, 2006.

Duke K. McCall, Jr., of Leatherwood, Walker, Todd & Mann, of Greenville, for Appellants.

Linda Byars McKenzie, of Brown, McKenzie & Bowen, of Greenville, for Respondents.

Justice PLEICONES:

The issue in this case is whether the employee's (Stone's) widow (respondent) is entitled to continue receiving workers' compensation benefits after Stone's death due to causes unrelated to his compensable injury. The full commission's appellate panel affirmed a single commissioner's order granting respondent's request for lump sum benefits, holding that respondent's claim was not barred by S.C.Code Ann. § 42–9–280 (1985), and that *res judicata* and/or collateral estoppel operated so as to bar appellants from contesting respondent's right to receive the money. The circuit court affirmed, citing Rule 59(e), SCRCP, as an additional bar. We reverse.

## FACTS

After Stone injured his left foot and leg and his back at work, he brought a workers' compensation claim. Stone subsequently developed a brain tumor. In October 1999, the single commissioner found Stone permanently and totally disabled and awarded him 500 weeks of compensation pursuant to S.C.Code Ann. § 42–9–10 (Supp.2004). In December 1999, Stone died from complications related to his brain tumor. Following a January 2000 hearing, the full commission's appellate panel issued an order confirming Stone's entitlement to disability payments pursuant to § 42–9–10. The circuit court affirmed and appellants appealed to the Court of Appeals.

On appeal, appellants argued as they had before the commission and the circuit court that Stone's disability should have been apportioned between the injury and the tumor, resulting in a lower compensation award pursuant to S.C.Code Ann. § 42–9–160 (1985). In its first unpublished opinion, the Court of Appeals acknowledged Stone's death, and affirmed the award. The Court of Appeals construed § 42–9–160, upon which appellants based their apportionment argument, to re-

quire apportionment only between two compensable injuries, and went on to state:

> For example, S.C.Code Ann. § 42–9–280 (1985 & Supp.2000) indicates that apportionment is not appropriate when death results from a noncompensable cause.

Appellants filed a petition for rehearing, arguing among other things that S.C.Code Ann. § 42–9–280 did not apply to Stone since he had received compensation under the first paragraph of § 42–9–10 and therefore "his award ceases with his death and is apportionable."

The Court of Appeals denied rehearing, but issued an amended unpublished opinion in January 2002. In this opinion, the Court of Appeals again affirmed, but altered its reference to § 42–9–280. Appellants' petition for a writ of certiorari was denied by this Court: it did not include any argument that Stone's claim had abated by operation of § 42–9–280, since that section was not at issue in this first appellate proceeding except by virtue of the Court of Appeals' use of it as a comparative. In this first series of appeals, neither respondent nor Stone's estate was ever substituted as a party following Stone's death. *See* Rule 226, SCACR (substitution of party upon death, etc.).

Following the denial of certiorari, respondent filed a petition with the commission seeking a dependency hearing. Appellants replied by letter that no dependency hearing was necessary as further benefit payments were barred by § 42–9–280. Following the dependency hearing, respondent was awarded lump sum benefits by the single commissioner, an award affirmed by an appellate panel of the full commission and the circuit court. This appeal follows.

## ISSUES

1) Are appellants precluded from contesting respondent's entitlement to benefits?

2) If not, does § 42–9–280 preclude respondent's receipt of benefits?

## ANALYSIS

### A. *Preclusion*

■ The commission and circuit court held appellants' defense, that Stone's right to benefits ceased upon his death pursuant to § 42–9–280 and that respondent therefore had no claim, was barred by the doctrine of *res judicata* and/or the doctrine of collateral estoppel. Appellants contend this was error. We agree.

The *res judicata*/collateral estoppel rulings are based upon appellants' failure to seek dismissal of their first appeal when Stone died following the single commissioner's order awarding Stone benefits. As explained *infra*, appellants did seek to stay the benefits proceedings before the commission while dependency was determined, but respondent's attorney's objection to that procedure was sustained.

■ *Res judicata* requires three elements be met: 1) a final, valid judgment on the merits; 2) identity of parties; and 3) the second action must involve matters properly included in the first suit. *E.g. Latimer v. Farmer*, 360 S.C. 375, 602 S.E.2d 32 (2004). Here, the parties are different, and the issue is not the amount of compensation due but rather whether the right to compensation survives Stone's death. *Res judicata* does not bar appellants' statute-based defense to respondent's dependency claim.

■ Further, the doctrine of collateral estoppel does not apply. "Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action." *Jinks v. Richland County*, 355 S.C. 341, 585 S.E.2d 281 (2003). Respondent's entitlement to benefits following Stone's death was neither actually litigated in the first action, nor was the entitlement issue necessary to the resolution of the amount of benefits dispute.

■ In addition, respondent essentially contends that appellants waived their right to contest respondent's right to benefits at the January 2000 hearing. The record refutes this contention. At the outset of this hearing, the following took place:

*Appellants' attorney:* May it please the Chairman and members of the Appellant [sic] Panel. I'm in a little bit of an unusual situation in this case in that Walter Stone is now deceased as of the end of December. And I would therefore move for a continuance of this Hearing until such time as a dependency or the proper dependents can be determined. Because no benefits can be paid, *if they are in fact payable,* until the dependency of Mr. Stone [sic] has been determined.

(emphasis supplied).

*Commissioner Lyndon:* If I could hear from [Mr. Stone's attorney] on that, sir?

*Mr. Stone's Attorney:* May it please the Panel. Of course, that is not even an issue before this Panel today. In the first place, this is an appeal from an Order. The fact that the man subsequently died, you can't have a dependency hearing, what happens to have a dependency hearing [sic] if the Commission were to say well, it's not compensable. And then if you affirm the case, then of course we have a dependency hearing.

*Commissioner Lyndon:* I understand. And I see it the way——unless my colleagues want——

*Commissioner Mickle:* I don't think you're prejudiced by it.

*Commissioner Lyndon:* I don't think you're prejudiced by it. So I'll note your Motion.

*Appellants' Attorney:* I will admit we're not prejudiced by it. But I would offer that in the Circuit Courts if you have a party that is deceased then the proceedings are stopped and the parties are realigned until you get an Administrator or a personal representation [sic] appointed to come into Court.

*Commissioner Atkins:* Excuse me, Mr. Chairman, [Appellants' Attorney], that would just hold up the benefits at a later time. I mean, we can go ahead and make this decision. This can be appealed wherever it needs to be appealed so that when that situation is taken care of then they would be prejudiced if they've had to not be able to continue or so that they could be paid at the appropriate time once all that was taken care of.

Nothing in this passage can be construed as a waiver of appellants' right to contest respondent's claim to benefits. If anything, this colloquy could be read to estop respondent from claiming any procedural bar to the litigation now, after the first appeals have been concluded, of her right to "benefits ... if they are in fact payable...."

■ Similarly, any contention that appellants could or should have raised the § 42–9–280 issue during the first appeals are refuted by this colloquy. Only issues raised and ruled upon by the commission are cognizable on appeal. *E.g., TNS Mills, Inc. v. S.C. Dep't of Rev.*, 331 S.C. 611, 503 S.E.2d 471 (1998) (on appeal from agency decision, circuit court can only review issues raised to and ruled upon by the commission). At respondent's attorney's insistence, the only issue before the panel in January 2000 was the amount of benefits to which Stone was entitled. In light of the commission's ruling, appellants did not, and could not, litigate the applicability of § 42–9–280.

■ The circuit court referred to Rule 59(e), SCRCP, in its conclusion that appellants were procedurally barred from denying respondent's entitlement to Stone's benefits. Apparently, the ruling is premised on the misapprehension that once the commission's appellate panel declined to discontinue the appeal pending a dependency hearing as appellants had requested, appellants were obligated to file a Rule 59(e) motion before the appellate panel to preserve the issue. Rule 59(e) is not applicable in proceedings before the commission. *See Nettles v. Spartanburg School Dist. # 7*, 341 S.C. 580, 535 S.E.2d 146, fn. 4 (Ct.App.2000).

■ Respondent also asserts as a sustaining ground that appellants' invocation of § 42–9–280 should be barred by laches. Given that when appellants raised the effect of Stone's death at the first available opportunity, that is, the January 2000 hearing before the appellate panel, respondent objected, and that appellants raised the issue at their next opportunity, that is, in response to respondent's request for a dependency hearing, equity will not and should not aid respondent. *See e.g., Hemingway v. Mention*, 228 S.C. 211, 89 S.E.2d 369 (1955) (laches invoked where appellants were not vigilant). Laches does not bar appellants' defense.

The circuit court erred in upholding the commission's ruling that there was a procedural bar to litigation on the merits of respondent's claim to post-death benefits.

B.  *Section 42–9–280*

■ Stone was awarded 500 weeks of benefits based on a finding of total disability pursuant to the first paragraph of S.C.Code Ann. § 42–9–10.[1] The statute provides:

§ **42–9–10.** Amount of compensation for total disability; what constitutes total disability. *(Title)*

When the incapacity for work resulting from an injury is total, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee during the total disability a weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages, but not less than seventy-five dollars a week so long as this amount does not exceed his average weekly salary; if this amount does exceed his average weekly salary, the injured employee may not be paid, each week, less than his average weekly salary. The injured employee may not be paid more each week than the average weekly wage in this State for the preceding fiscal year. In no case may the period covered by the compensation exceed five hundred weeks except as hereinafter provided. *(1st paragraph)*

The loss of both hands, arms, feet, legs, or vision in both eyes, or any two thereof, constitutes total and permanent disability to be compensated according to the provisions of this section. *(2nd paragraph)*

Notwithstanding the five hundred week limitation prescribed in this section or elsewhere in this title, any person determined to be totally and permanently disabled who as a result of a compensable injury is a paraplegic, a quadriplegic, or who has suffered physical brain damage is not subject to the five hundred week limitation and shall receive the benefits for life. *(3rd paragraph)*

---

1.  Respondent argues in her brief that Stone could have been awarded benefits under § 42–9–30(15) and (19) for loss of use of his back and leg. Appellants conceded at oral argument that such an award could have been made, had the commission chosen to utilize that statute. The order, however, unequivocally finds total disability under § 42–9–10, and awards compensation pursuant to that statute alone.

Notwithstanding the provisions of § 42–9–301, no total lump sum payment may be ordered by the commission in any case under this section where the injured person is entitled to lifetime benefits. *(4th paragraph)*

Appellants contend the commission and circuit court erred in concluding that the right to Stone's benefits did not terminate upon his death pursuant to § 42–9–280. The statute provides:

§ **42–9–280.** Payment of unpaid balance of compensation when employee dies.

When an employee receives or is entitled to compensation under this Title for an injury covered by the second paragraph of § 42–9–10 or 42–9–30 [2] and dies from any other cause than the injury for which he was entitled to compensation, payment of the unpaid balance of compensation shall be made to his next of kin dependent upon him for support, in lieu of the compensation the employee would have been entitled to had he lived. But if the death is due to a cause that is compensable under this Title and the dependents of such employee are awarded compensation therefor, all right to unpaid compensation provided by this section shall cease and determine.

Appellants contend that since Stone's benefits were based upon paragraph 1 of § 42–9–10, the right to compensation abated upon his death from the brain tumor. The commission based its decision to continue benefits to respondent despite § 42–9–280 on this reasoning:

It is inconceivable that the legislature intended to protect the widow and/or dependents who are dependent upon the deceased employee for support only when the deceased employee suffered a schedule loss as set forth in § 42–9–10 or § 42–9–30. This clearly would defeat the beneficent purpose for which the workers' compensation law was passed, that being to protect the injured employee and his dependents. To hold otherwise would deprive the widow in this case of the equal protection of the law.

---

**2.** This is the "scheduled members" statute, which was not the basis for Stone's 500 week award.

The commission then cited § 42–9–290 as evidence of "the legislative intent to take care of those dependent upon an employee whose injury is work related." As appellants correctly point out, § 42–9–290 is the applicable statute where the employee dies from the injury or accident which entitled him to workers' compensation benefits. It simply has no application to § 42–9–280, which applies when, as here, the employee dies from an independent cause.

The circuit court upheld the commission's order. It began by reciting numerous cases which stand for the principle that the Workers' Compensation Act must be liberally construed in favor of injured workers and their dependents. It concluded that "if the legislature meant to abrogate the rights of an individual such as [respondent] such would have been set forth in plain language."

The language of § 42–9–280 is plain. The legislature, as is its prerogative, determined that dependent survivors should receive all benefits due an injured worker who lost the use of a scheduled member (§ 42–9–30), or "lost both hands, arms, feet, legs, or vision in both eyes, or any two thereof" (second paragraph of § 42–9–10), i.e., those who suffered a physical loss, while the dependents of a person totally disabled for another reason, i.e., one who suffered a wage loss compensated under the first paragraph of § 42–9–10, should not. The legislative distinction between "physical loss" and "wage loss" appears in other workers' compensation statutes as well. *See e.g.*, §§ 42–9–150; 42–9–160; 42–9–170.

■ Professor Larson notes that since a compensation award, unlike a tort award, is a personal one based on the employee's need for a substitute for lost wages and earning capacity, in the absence of a special statutory provision, heirs have no claim to unaccrued weekly payments. *Larson's Workers' Compensation Law* (2000) §§ 89.01; 89.03. In construing a workers' compensation statute, "the words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation." *Adkins v. Comcar Industries, Inc.*, 323 S.C. 409, 475 S.E.2d 762 (1996) (internal citation omitted). Section 42–9–280 specifically provides for the inheritability of two types of

awards only. We reverse the orders permitting respondent to receive unaccrued benefits.

## CONCLUSION

Stone was awarded workers' compensation benefits pursuant to the first paragraph of § 42–9–10. Those benefits terminated upon his death from the tumor. § 42–9–280. The circuit court order affirming the lump sum award to respondent is therefore

REVERSED.

MOORE, BURNETT, JJ., and Acting Justice D.L. JEFFERSON, concur.

TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL, dissenting:

I respectfully dissent. Appellants contested Walter Stone's workers' compensation award for over two years after his unfortunate death, never once raising S.C.Code Ann. § 42–9–280 (1985) as a bar to the recovery of benefits. In my view, when a workers' compensation claimant dies while his claim is being appealed, an employer may not, after final judgment in the appeal, assert § 42–9–280 in an effort to avoid paying any benefits.

Accordingly, I would affirm the circuit court and find that Respondent is entitled to receive the full amount of Walter Stone's compensation award.